**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL D. COHEN,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA and MICHAEL CARVAJAL, Director of the Federal Bureau of Prisons,<br><br>Respondents. | No. 20 Civ. 10833 (JGK) |

**RESPONDENTS' RETURN AND MEMORANDUM OF LAW IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS**

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
Attorney for Respondents
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2679
Facsimile: (212) 637-2686
Email: allison.rovner@usdoj.gov

ALLISON M. ROVNER
Assistant United States Attorney
- Of Counsel -

## Table of Contents

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ........................................................................................................2

ARGUMENT ............................................................................................................3

I. Legal Standards ...................................................................................................3

A. Habeas Petitions Pursuant to 28 U.S.C. § 2241 ...............................................3

B. ETCs Under the FSA ........................................................................................4

II. Cohen's Petition Should Be Denied ....................................................................6

A. Cohen's Petition Is Not Ripe .............................................................................6

B. Cohen Failed to Exhaust His Administrative Remedies ....................................9

C. Cohen Is Not Entitled to ETCs .........................................................................12

CONCLUSION ........................................................................................................14

**Table of Authorities**

*Cases:*


*Abbott Laboratories v. Gardner*,
387 U.S. 136 (1967) .......... 7

*Carmona v. U.S. Bureau of Prisons*,
243 F.3d 629 (2d Cir. 2001) .......... 3, 9, 10, 11

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) .......... 13

*Goodman v. Ortiz*,
No. 20 Civ. 7582, 2020 WL 5015613 (D.N.J. Aug. 25, 2020) .......... 8, 12

*Guitard v. U.S. Sec'y of Navy,*
967 F.2d 737 (2d Cir. 1992) .......... 10, 11

*Hand v. Barr*,
No. 20 Civ. 00348, 2021 WL 392445 (E.D. Cal. Feb. 4, 2021) .......... 8

*Hare v. Ortiz*,
No. 20 Civ. 14093, 2021 WL 391280 (D.N.J. Feb. 4, 2021) .......... 14

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
725 F.3d 65 (2d Cir. 2013) .......... 6

*James v. Johns*,
No. 19 Civ. 117, 2020 WL 5047158 (S.D. Ga. Aug. 4, 2020) .......... 8

*James v. Johns*,
No. 19 Civ. 117, 2020 WL 5046303 (S.D. Ga. Aug. 26, 2020) .......... 8

*Kennedy-Robey v. Warden, FCI Pekin*,
No. 20 Civ. 1371, 2021 WL 797516 (C.D. Ill. Mar. 2, 2021) .......... 7, 8, 12, 14

*Levine v. Apker*,
455 F.3d 71 (2d Cir. 2006) .......... 3

*Linot v. United States*,
21 No. Civ. 21, 2021 WL 265264 (E.D. Ky. Jan. 26, 2021) .......... 12

*Llewlyn v. Johns*,
No. 20 Civ. 77, 2021 WL 535863 (S.D. Ga. Jan. 5, 2021) .......... 7, 9

*Llewlyn v. Johns*,
No. 20 Civ. 77, 2021 WL 307289 (S.D. Ga. Jan. 29, 2021) .......... 8

*Ohio Forestry Ass'n, Inc. v. Sierra Club*,
523 U.S. 726 (1998) .......... 7

*Rosenthal v. Killian*,
667 F. Supp. 2d 364 (S.D.N.Y. 2009) .......... 9

*Ross v. Bank of Am., NA.*,
524 F.3d 217 (2d Cir. 2008) .......... 6

*Rumsfeld v. Padilla*,
542 U.S. 426 (2004) ........ 1
*Skaftouros v. U.S.*,
667 F.3d 144 (2d Cir. 2011) ........ 3
*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ........ 6
*United States v. Wilson*,
503 U.S. 329 (1992) ........ 3
*United States v. Nwankwo*,
No. 12 Cr. 31, 2019 WL 4743823 (S.D.N.Y. Sept. 17, 2019) ........ 11
*United States v. Quashie*,
No. 14 Cr. 0376, 2019 WL 7194211 (E.D.N.Y. Dec. 26, 2019) ........ 12
*Walker v. Johnston*,
312 U.S. 275 (1941) ........ 3, 4, 5, 6

*Statutes:*

18 U.S.C. § 3621 ........ *Passim*
18 U.S.C. § 3624 ........ 2, 6
18 U.S.C. § 3632 ........ *Passim*
18 U.S.C. § 3635 ........ 5, 12
28 U.S.C. § 2241 ........ 1, 3
28 U.S.C. § 2242-43 ........ 1

*Regulations:*

28 C.F.R. § 0.96 ........ 3
28 C.F.R. § 542.10 ........ 10
28 C.F.R. § 542.13 ........ 10
28 C.F.R. § 542.14 ........ 10
28 C.F.R. § 542.15 ........ 10
28 C.F.R. § 542.18 ........ 10

*Other Authorities:*

85 Fed. Reg. 75268, 2020 WL 6889145 (November 25, 2020) (proposed regulations) ...... 6, 7, 13

Respondents United States of America and Michael Carvajal, Director of the Bureau of Prisons ("BOP") (collectively, "Respondents"),[1] by their attorney, Audrey Strauss, United States Attorney for the Southern District of New York, respectfully submit this Return and Memorandum of Law in opposition to the habeas petition pursuant to 28 U.S.C. § 2241 (the "Petition") of Michael D. Cohen ("Cohen"). The Court should deny the Petition for the reasons set forth below.

**PRELIMINARY STATEMENT**

The First Step Act of 2018 ("FSA") required the Attorney General to develop a risk and needs assessment system to be used to determine when to provide incentives and rewards for participation in evidence-based recidivism reduction ("EBRR") programs or productive activities ("PAs"). Participation in these programs can result in the issuance of Earned Time Credits ("ETCs") that can, in some circumstances, be applied toward prerelease custody or supervised release. Cohen argues that he is entitled to ETCs under the FSA due to his participation in EBRR programs and PAs—including courses pertaining to calisthenics fitness, drug education, and having a positive mental attitude.

Cohen's contention fails for multiple reasons. First, this matter is not ripe for review because Cohen has not shown an imminent—or any—injury. The FSA does not require BOP to apply ETCs for any inmate until January 15, 2022, and in any event, Cohen is not entitled to any ETCs for the programs and activities that he completed. Second, Cohen failed to exhaust his administrative remedies with the BOP, which is a prerequisite for judicial review. Finally, even

[1] Cohen has sued the wrong parties. The proper respondent in a habeas corpus action is the person having custody of the Petitioner—here, the Warden of Federal Correctional Institution ("FCI") Otisville, Warden W.S. Pliler. *See* 28 U.S.C. §§ 2242-43; *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004).

were Cohen able to overcome these procedural obstacles, his Petition fails on the merits. Cohen is not eligible to receive ETCs for any of the courses or work he identifies as having completed. This is primarily because Cohen does not have a need for purposes of lowering his risk of recidivism in any of the areas in which he completed courses or work. Further, most of the courses or work Cohen completed were not approved EBRR programs or PAs. For the ones that were approved, Cohen completed all but one of them before the January 15, 2020, start date for when ETCs could be earned.

In sum, there are multiple grounds on which the Court should deny Cohen's Petition.

**BACKGROUND**

On or about May 6, 2019, Cohen began serving a 36-month sentence at FCI Otisville based on his nine felony convictions relating to tax evasion, false statements, and campaign finance crimes. *See United States v. Cohen*, 18 Cr. 602 (WHP), ECF No. 29; *United States v. Cohen*, 18 Cr. 850 (WHP), ECF No. 16; Declaration of Robin Summers ("Summers Decl.") ¶¶ 2, 4 & Ex. B; Declaration of Nicole Gulliver ("Gulliver Decl.") ¶ 17. Cohen was released on furlough on May 21, 2020, and he returned to FCI Otisville on July 9, 2020. Gulliver Decl. ¶ 18. On July 24, 2020, Cohen was placed on home confinement, where he remains today. *Id.*; Summers Decl. ¶ 4.

Cohen's full-term sentence would be satisfied on May 3, 2022. Summers Decl. ¶ 6 & Ex. A. However, Cohen is projected to receive 162 days of Good Conduct Time ("GCT") off of his full-term sentence. *Id*. Assuming Cohen receives all GCT time available to him pursuant to 18 U.S.C. § 3624(b), Cohen is scheduled to be released from BOP custody on November 22, 2021. Summers Decl. ¶ 2 & Ex. A; Gulliver Decl. ¶ 17. As part of his sentence, Cohen must then serve a three-year term of supervised release. *See United States v. Cohen*, 18 Cr. 602 (WHP), ECF No. 29; *United States v. Cohen*, 18 Cr. 850 (WHP), ECF No. 16; Gulliver Decl. ¶ 17.

Cohen, proceeding *pro se*, filed the instant habeas petition on December 21, 2020. *See* ECF No. 1. He alleges that he is "entitled to" 197 days of ETCs under the FSA for various EBRR programs and PAs that he claims he completed at FCI Otisville, but that BOP has refused to calculate or apply his ETCs. *See* Pet. ¶¶ 12-60. He further claims that "[t]his matter must be resolved in the near future" because otherwise he "is likely to be incarcerated for longer than is proper under the statutes," which would deny him due process. *Id.* ¶¶ 38, 65-70.

## ARGUMENT

### I. Legal Standards

#### A. Habeas Petitions Pursuant to 28 U.S.C. § 2241

A federal inmate may seek a writ of habeas corpus under 28 U.S.C. § 2241 where, rather than attack the legality of his underlying sentence, he "challenges instead its execution subsequent to his conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001) (citations omitted). Matters related to the execution of a sentence include, among other grievances, the "computation of a prisoner's sentence by prison officials." *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (citation and internal quotation marks omitted). The authority to compute a prisoner's sentence rests with the Attorney General, acting through the BOP. *See United States v. Wilson*, 503 U.S. 329, 331-32 (1992); 28 C.F.R. § 0.96. It is the petitioner's burden to prove that the BOP has calculated his sentence "contrary to law[,] and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence." *Skaftouros v. U.S.*, 667 F.3d 144, 158 (2d Cir. 2011) (citing *Walker v. Johnston*, 312 U.S. 275, 286 (1941)) ("On a hearing [the § 2241 petitioner has] the burden of sustaining his allegations by a preponderance of evidence.").

**B. ETCs Under the FSA**

The FSA of 2018, signed into law on December 21, 2018, amends 18 U.S.C. § 3621, the statute governing the calculation of federal sentences. Among other things, the FSA required the Attorney General to develop a "risk and needs assessment system" for federal inmates within 210 days after the law's enactment. *See* 18 U.S.C. § 3632(a). The Attorney General met this deadline on July 19, 2019, when the BOP released the "Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"). *See* Press Release, Department of Justice Announces the Release of 3,100 Inmates Under the First Step Act, Publishes Risk and Needs Assessment System, https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and (July 19, 2019).

The FSA also directed BOP within 180 days of PATTERN's release date—*i.e.*, by January 15, 2020—to "implement and complete the initial intake risk and needs assessment for each prisoner" and to "begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination," 18 U.S.C. § 3621(h)(1)(A); to "begin to expand the effective evidence-based recidivism reduction programs and productive activities and add any new" such programs and activities as necessary, *id.* at § 3621(h)(1)(B); and to "begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, while prisoners are participating in and completing" the EBRR programs and PAs, *id.* at § 3621(h)(1)(C).

A provision regarding "phase-in" requires the BOP to provide EBRR programs and PAs "for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner" pursuant to § 3621(h)(1)(A), *see id.* at § 3621(h)(2)(A), and "develop and validate the risk and needs assessment tool to be used in the

reassessments of risk of recidivism, while prisoners are participating in and completing" EBRR programs and PAs, *see id.* at § 3621(h)(2)(B). The statute further states that during the two-year phase-in period, "the priority for such programs and activities shall be accorded based on a prisoner's proximity to release date." *Id.* at § 3621(h)(3). The statute also states that "[b]eginning on the date of enactment of this subsection, the Bureau of Prisons may begin to expand any evidence-based recidivism reduction programs and productive activities that exist at a prison as of such date, and may offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in" the FSA. 18 U.S.C. § 3621(h)(4).

As part of the risk and needs assessment under FSA, BOP is required to determine the recidivism risk of each prisoner and determine what EBRR programs and PAs a prisoner should complete "based on the prisoner's specific criminogenic needs." *Id.* at § 3632(a)-(b). The BOP has identified the following 13 "needs" that should be assessed for each inmate: Anger/Hostility, Finance/Poverty, Antisocial Peers, Medical, Cognitions, Mental Health, Dyslexia, Recreation/Leisure/Fitness, Education, Substance Abuse, Family/Parenting, Trauma, and Work. Gulliver Decl. ¶ 5 & Ex. A. EBRR programs are those that have been shown by research as likely to be effective in reducing recidivism and are designed to help prisoners succeed in their communities upon release from prison. 18 U.S.C. § 3635(3) (also listing examples of types of EBRR programs). PAs refer to activities that are designed to allow a prisoner determined as having a minimum or low risk of recidivating to remain productive and maintain that minimum or low risk. *Id.* at § 3635(5). BOP has developed a catalog listing approved EBRR programs and PAs. Gulliver Decl. ¶ 7 & Ex. C. In order for an inmate to receive ETCs under the FSA, an inmate must successfully complete one of the BOP-approved EBRR programs or PAs related to one of the particular needs assigned to that inmate. *Id.* at ¶ 7.

Prisoners who successfully complete assigned EBRR programs and PAs will earn 10 days of ETCs for every 30 days of successful participation in EBRR programs and PAs. *Id.* at § 3632(d)(4)(A). Prisoners who BOP has determined to be at a minimum or low risk for recidivating and who have not increased their risk of recidivism over two consecutive assessments will earn an additional five days of time credits for every 30 days of successful participation in EBRR programs and PAs. *Id.* BOP has interpreted a "day" to mean one 8-hour period of programming. *See* 85 Fed. Reg. 75268, 2020 WL 6889145, at 75272 (November 25, 2020) (proposed regulation 28 C.F.R. § 523.42(b), (c)). A prisoner may not earn ETCs for EBRR programs that the prisoner completed prior to the date of enactment of the subchapter. 18 U.S.C. § 3632(d)(4)(B). The FSA provides that ETCs earned by prisoners who successfully completed EBRR programs or PAs "shall be applied toward time in prerelease custody or supervised release" and that the Director of BOP "shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." *Id.* at § 3632(d)(4)(C). To be eligible for prelease custody or supervised release based on ETCs, among other things, a prisoner must have earned ETCs "in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." *Id.* at § 3624(g)(1)(A).

## II. Cohen's Petition Should Be Denied

### A. Cohen's Petition Is Not Ripe

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., Art. III, § 2; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014). In order to meet this constitutional requirement, the ripeness doctrine requires that a plaintiff's injury be "imminent rather than conjectural or hypothetical." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013) (quoting *Ross v. Bank of Am., NA.*, 524 F.3d 217, 226 (2d Cir. 2008)). The ripeness doctrine "is designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract

disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732-33 (1998) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967)).

Cohen's Petition is not ripe for review because he has suffered no imminent injury. BOP is not required to provide EBRR programs and PAs for all prisoners, or calculate, award, or apply ETCs, until January 15, 2022. This is because FSA gave BOP two years from the date on which it completed a risk and needs assessment for each prisoner (*i.e.*, January 15, 2020) to phase in programming and provide EBRR programs and PAs for all prisoners and gave BOP discretion on the extent of the System's implementation during the two-year phase-in period. *See* 18 U.S.C. § 3621(h)(2)(A) (two-year phase in); 18 U.S.C. § 3621(h)(4) (word "may" indicating that it leaves extent of implementation during phase-in period to BOP's discretion). BOP's decision to wait to implement ETCs is based, in part, on the need for the regulations it has promulgated, which define various terms in the statute and provide directives for implementing the System, to be adopted. *See* FSA Time Credits, 85 Fed. Reg. 75,268, 2020 WL 6889145 (November 25, 2020) (proposed regulations).

Based on the above, nearly every court to have addressed the issue has concluded that inmates' habeas petitions challenging BOP's failure to calculate or award ETCs should be denied or dismissed as premature. *See, e.g., Kennedy-Robey v. Warden, FCI Pekin*, No. 20 Civ. 1371, 2021 WL 797516, at *3 (C.D. Ill. Mar. 2, 2021) ("Not only is the BOP's decision to delay awarding credits permitted under the statute, the BOP has legitimate reasons for desiring to do so. As Respondent notes, the BOP has promulgated regulations clarifying portions of the First Step Act. . . . Clarification of these terms is necessary for uniform application of the statute."); *Llewlyn v.*

*Johns*, No. 20 Civ. 77, 2021 WL 535863, at *2 (S.D. Ga. Jan. 5, 2021) ("Because the First Step Act does not require actual implementation for each inmate until January 2022, [petitioner] is not entitled to an order from this Court compelling the BOP to recalculate his time credits. His petition is premature, and his claim is not yet ripe."), *report and recommendation adopted by* 2021 WL 307289 (S.D. Ga. Jan. 29, 2021); *James v. Johns*, No. 19 Civ. 117, 2020 WL 5047158, at *2 (S.D. Ga. Aug. 4, 2020) (same), *report and recommendation adopted by* 2020 WL 5046303 (S.D. Ga. Aug. 26, 2020); *Hand v. Barr*, No. 20 Civ. 00348, 2021 WL 392445, at *5 (E.D. Cal. Feb. 4, 2021) (Report & Recommendation) ("[B]ecause the [First Step] Act does not require BOP to provide evidence-based recidivism reduction programs and productive activities for all prisoners until January 2022, the Court finds that Petitioner's claims regarding earned time credits and evidence-based recidivism reduction programs are not ripe."). *But see Goodman v. Ortiz*, No. 20 Civ. 7582, 2020 WL 5015613, at *5-6 (D.N.J. Aug. 25, 2020) (stating that "BOP must gradually implement the risk recidivism program, including the priority application of incentives to prisoners whose release dates are nearer, such as Petitioner").[2]

---

[2] The undersigned has located no decisions agreeing with the *Goodman* court (aside from a couple of decisions in other cases by the *Goodman* court itself). Rather, courts have distinguished or disagreed with *Goodman*, including on the basis that, unlike in *Goodman*, in their cases there was no evidence that the petitioner had participated in programs or activities that would entitle him to credit. *See, e.g.*, *Hand v. Barr*, No. 20 Civ. 00348, 2021 WL 392445, at *5 (distinguishing *Goodman*, where among other things there was no evidence showing that the petitioner had participated in programs or activities that would entitle him to credits); *Kennedy-Robey*, 2021 WL 797516, at *3-4 (disagreeing with *Goodman* that statutory language requires immediate

Cohen has not suffered imminent injury for an additional reason. As discussed below, in Section II.C below, the programs and activities in which Cohen participated do not entitle to him to credit. *See, e.g.*, *Llewlyn*, 2021 WL 535863, at *2 ("[T]here is nothing before the Court indicating the programs and activities in which [petitioner] asserts he has participated will entitle him to his sought after credits. Therefore, to provide [petitioner] with the relief he requests would result in an unwarranted federal court interference with the administration of prisons.") (citations and internal quotation marks omitted). Accordingly, the Court should deny Cohen's petition as unripe.

**B. Cohen Failed to Exhaust His Administrative Remedies**

The Court should also deny Cohen's Petition because he failed to exhaust his administrative remedies before filing his Petition. Federal prisoners may not file petitions for a writ of habeas corpus under § 2241 without first exhausting their available administrative remedies set forth in BOP's Administrative Remedy Program. *See Carmona v. BOP*, 243 F.3d 629, 633-34 (2d Cir. 2001); 28 C.F.R. Part 542. The exhaustion requirement promotes "the interests of judicial economy and accuracy." *Carmona*, 243 F.3d at 634. "Failure to exhaust administrative remedies results in a procedural default, which bars judicial review unless the petitioner persuades the Court that the failure to exhaust should be excused." *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009) (citing *Carmona*, 243 F.3d at 634).

---

implementation of System). Here, as noted above, there is no evidence that Cohen has participated in programs or activities that would entitle him to credits, so *Goodman* is distinguishable on this basis alone.

Specifically, "[w]hen . . . legitimate circumstances beyond the prisoner's control preclude him from fully pursuing his administrative remedies," failure to exhaust may be excused by a showing of "cause and prejudice." *Carmona*, 243 F.3d at 634. Generally, cause can be shown when: (1) "available remedies provide no genuine opportunity for adequate relief"; (2) "irreparable injury may occur without immediate judicial relief"; (3) "administrative appeal would be futile"; and (4) "in certain instances a plaintiff has raised a substantial constitutional question." *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 741 (2d Cir. 1992) (citation and internal quotation marks omitted).

BOP has established a four-step process for federal inmates to exhaust administrative remedies. *See* 28 C.F.R. § 542.10 *et seq.* First, an inmate generally must first attempt to informally resolve his dispute with prison staff. *See* 28 C.F.R. § 542.13(a). Second, if the issue is not resolved informally, the inmate may submit a formal written request on the appropriate form—a BP-9 form—to the Warden of the institution at which the inmate is housed. *See Id.* at § 542.14(a). The warden has 20 days from the date of receipt to respond the request, with the option of a 20-day extension. *Id.* at § 542.18. Third, within 20 calendar days of the Warden's signing of the response, the inmate can then appeal an unfavorable decision to the appropriate BOP Regional Director using a BP-10 form. *Id.* at § 542.15(a). The Regional Director has 30 calendar days to respond, with the option of a 30-day extension. *Id.* at § 542.18. Fourth, within 30 days of the date the Regional Director signs the response, an inmate can then appeal an unfavorable decision at the regional level to the BOP's General Counsel at the Central Office in Washington, D.C. using a BP-11 form. *Id.* at § 542.15(a). A response must be made by the General Counsel within 40 days, with the option of a 20-day extension. *Id.* at § 542.18. The regulations further provide that if an inmate fails to

receive a response during the allocated time period, including extensions, the inmate may consider the absence of a response to be a denial at that level. *Id.*

Here, Cohen failed to exhaust his administrative remedies. Although Cohen filed a BP-9 request for an administrative remedy with BOP on December 1, 2020, he failed to complete the remainder of the administrative process before filing the instant action on December 21, 2020. *See* Summers Decl. ¶ 5 & Ex. C; ECF No. 2. Cohen also has not demonstrated cause to excuse the exhaustion requirement. *See Carmona*, 243 F.3d at 634; *Guitard*, 967 F.2d at 741. The available remedies provide adequate opportunity for any relief to which Cohen is entitled—which as discussed in this brief, is none. Further, there is no evidence that Cohen will suffer irreparable injury without immediate judicial relief—and in fact, as described in this brief, Cohen has suffered no injury. Exhaustion would also not be futile because Cohen may learn through the administrative process that he was not entitled to any ETCs for the programs and activities he completed and would have a chance to appeal the determination through multiple levels within BOP. Indeed, Cohen alleges that on December 15, 2020, he received a letter from BOP stating that he was not entitled to any credits for work he performed at FCI Otisville. Pet. ¶¶ 48-49. Nor has Cohen raised a substantial constitutional question. Although Cohen's Petition references a due process violation if he spends more time in confinement than required under law, Pet. ¶¶ 67-70, Cohen has no entitlement to an immediate application of ETCs under the FSA, and he has not been deprived of any ETCs to which he is entitled.

Accordingly, the Court should deny the Petition because Cohen failed to exhaust his administrative remedies. *Cf. United States v. Nwankwo*, No. 12 Cr. 31, 2019 WL 4743823, at *2 (S.D.N.Y. Sept. 17, 2019) (requiring criminal defendant to apply to BOP for ETCs under FSA, and if defendant disagrees with BOP's determination, to exhaust his administrative remedies

within BOP before moving the court for a reduction of his sentence); *United States v. Quashie*, No. 14 Cr. 0376, 2019 WL 7194211, at *1 (E.D.N.Y. Dec. 26, 2019) (similar); *see also, e.g.*, *Linot v. United States*, 21 No. Civ. 21, 2021 WL 265264, at *1-2 (E.D. Ky. Jan. 26, 2021) (same in context of § 2241 habeas petition). *But see Goodman*, 2020 WL 5015613, at *2-3 (citing non-controlling authority, even in the Third Circuit, for the proposition that because petitioner raised a claim based on statutory interpretation of the FSA, exhaustion is not required); *Kennedy-Robey v. Warden*, 20 Civ. 1371 (C.D.Ill. Jan. 5, 2021), ECF No. 9 at 7-10 (concluding that exhaustion would be futile on the statutory interpretation issue of whether the FSA requires BOP to award ETCs now rather than to wait until January 15, 2022, since BOP had pre-determined the issue in multiple cases, although requiring petitioner to exhaust the issue of how many ETCs petitioner has earned or any other individualized issue, and ultimately finding for respondents on the FSA statutory construction issue, *see Kennedy-Robey*, 2021 WL 797516, at *3).

**C. Cohen Is Not Entitled to ETCs**

The Court should also deny Cohen's Petition because he is not entitled to ETCs for the courses and work he completed. As noted above, the FSA requires BOP to determine what EBRR programs and PAs a prisoner should take "based on the prisoner's specific criminogenic needs." 18 U.S.C. § 3632(a)-(b). To comply with this requirement, BOP has established a list of EBRR programs and PAs that meet the definitions set forth in 18 U.S.C. § 3635. Gulliver Decl. ¶ 7 Ex. C. Therefore, before an inmate can receive ETCs, he must complete EBRR programs or PAs related to one of the specific needs assigned to the inmate. *Id.*;

Cohen alleges in his Petition that he should receive ETCs for the following nine programs or activities that he completed: Doing Time with the Right Mind ("DTRM") (24 hours); Drug Education: Freedom from Drugs (15 hours); Interventions 2 (60 hours); Health/Fitness (3 hours);

Victim Impact (26 hours); Threshold Program (72 hours); Positive Mental Attitude ("PMA") (24 hours); Business Start-Up (16 hours); and work at Water Treatment and Pipe Shop H.V.A.C. (500 hours). *See* Pet. ¶¶ 31-33. Despite Cohen's contentions, he has not completed any EBRR programs or PAs for which he can receive ETCs. BOP determined that Cohen did not have a "need" in any of the 13 need categories discussed above, and thus in any category to which these programs relate. Gulliver Decl. ¶¶ 6-16, Exs. B & C. For this reason alone, Cohen is not entitled to ETCs for any of the nine programs or activities that he identifies in his Petition. *See* Pet. ¶¶ 31-33; Gulliver Decl. ¶¶ 7-16. Further, most of the programs and activities Cohen completed—including DTRM, Interventions 2, Business Startup, PMA, and Calisthenics Fitness—are not approved EBRR programs or PAs. Gulliver Decl. ¶¶ 8, 11, 13-15. Cohen also completed a couple of approved PAs—including Drug Education: Freedom from Drugs and Victim Impact—before January 15, 2020, when they were eligible for completion. Gulliver Decl. ¶¶ 7, 9-10.[3]

---

[3] BOP interprets the FSA to only make ETCs available for EBRR programs and PAs completed after January 15, 2020. *See* 85 Fed. Reg. at 75272 (proposed regulation 28 C.F.R. § 523.42(d)(1)). This interpretation is reasonable and should be accorded deference. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843, 865 (1984). Congress indicated that inmates may not earn ETCs for successful completion of EBRR programs and PAs completed "prior to the enactment of this subchapter." 18 U.S.C. § 3632(d)(4)(B). While Subchapter D establishes July 19, 2019, as an effective date for the development of the risk and needs assessment system, *see id.* at § 3632(a), Congress gave the BOP until January 15, 2020, to implement the system, *see id.* at § 3621(h)(1)(A). Implementation includes completing an inmate's initial risk and needs assessment and assigning the inmate to EBRR programming and PAs. *Id.*

Accordingly, because Cohen is not entitled to ETCs for any program or activity he completed, the Court should deny his Petition.

## CONCLUSION

For the foregoing reasons, the Court should deny Cohen's Petition.

---

The only decision the undersigned has located addressing this issue (from the same court as in *Goodman*) has disagreed with BOP's interpretation, which it found was not entitled to *Chevron* deference, and concluded that inmates can earn ETCs for EBRR programs and PAs completed on or after December 21, 2018, the date the FSA became law. *See Hare v. Ortiz*, No. 20 Civ. 14093, 2021 WL 391280, at *6-7 (D.N.J. Feb. 4, 2021). Respondents respectfully submit that the *Hare* court incorrectly decided this issue. To allow inmates to earn FSA time credits for successful completion of EBRR programs or PAs before the BOP has assessed their risk and needs and assigned them to the programming is inconsistent with the congressional intent in enacting the FSA for BOP to implement a system to incentivize inmates to participate in programming and thereby reduce their risk of recidivism. *See, e.g.*, *Kennedy-Robey*, 2021 WL 797516, at *2 (recognizing that "despite . . . broad language, . . . provisions of the First Step Act allow the BOP to delay the immediate application of the System and also limit when prisoners can have their time credits applied"). In any event, this issue is not material here because Cohen did not have a need in any area and therefore could not receive ETCs for completing EBRR programs or PAs.

Dated: New York, New York
March 15, 2021

Respectfully submitted,

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
Attorney for Respondents

By: /s/ *Allison M. Rovner*
ALLISON M. ROVNER
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2691
Facsimile: (212) 637-2750
E-mail: allison.rovner@usdoj.gov

**CERTIFICATE OF COMPLIANCE**

I hereby certify pursuant to Section II.D of the Court's Individual Rules of Practice that this brief, excluding the caption, table of contents, table of authorities, signature, and this certification, contains 4,472 words.

Dated: March 15, 2021

By: /s/ Allison M. Rovner
ALLISON M. ROVNER
Assistant United States Attorney