UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------x:
                                :
MICHAEL D. COHEN,               :
                                :
              Petitioner,       :    No.
         v.                     :
                                :
                                :
UNITED STATES OF AMERICA, and   :
                                :
MICHAEL CARVAJAL, DIRECTOR      :
OF THE FEDERAL BUREAU OF        :
PRISONS                         :
              Respondents.      :
-------------------------------x:
```

## PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### PERSONAL INFORMATION

1. Petitioner, Michael D. Cohen, is a New York resident that is, at the time of this filing, currently on compassionate release from FCI Otisville Satellite camp due to the COVID-19 pandemic.

2. The Respondents in this matter are the United States Government and Michael Carvajal, the Director of the Federal Bureau of Prisons.

3. No petition for a writ of habeas corpus has previously been filed in any court to review Petitioner's case.

### DECISION OR ACTION BEING CHALLENGED

4. Petitioner brings this instant Petition and challenges how his sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits).

1

5. Petitioner is challenging the judgment of conviction entered by the Honorable William H. Pauley, III of the United States District Court for the Southern District of New York (Foley Square).

6. Petitioner's underlying criminal matter is docketed at 1:18-cr-00602-WHP-1 and the date of the judgment of conviction is August 21, 2018.

7. Petitioner pled guilty to nine separate counts: (i) five counts of tax evasion, in violation of 26 U.S.C. § 7201; (ii) one count of making a false statement to a financial institution, in violation of 18 U.S.C. § 1014; (iii) two counts of making unlawful campaign contributions, in violation of 52 U.S.C. § 30109(d)(1)(A); and (iv) one count of making a false statement to the Congress, in violation of 18 U.S.C. § 1001(a)(2).

8. Petitioner pled guilty to the first eight counts on August 21, 2018, pursuant to a plea agreement.

9. Petitioner pled guilty to the ninth count on November 29, 2018, pursuant to a plea agreement with the Special Counsel's Office. The cases were consolidated for sentencing.

10. The Court imposed a sentence of 36 months' imprisonment on the charges in the SDNY case.

11. The Court also imposed a concurrent sentence of two months' imprisonment on the charge in the Special Counsel's Office case.

12. Enacted on December 21, 2018, the First Step Act (hereinafter "FSA" or "The Act") was the result of a bipartisan legislative effort to moderately overhaul the criminal justice system.

13. Congress aimed to enhance public safety by improving the effectiveness and efficiency of the federal prison system with offender risk and needs assessment, individual risk

reduction incentives and rewards, and risk and recidivism reduction. HR Rep. No. 115-699 at 22 (2018). See United States v. Simmons, 375 F. Supp. 3d 379 (2nd Cir. 2019).

    14.    The Act states as follows:

Not later than 210 days after the date of enactment of this subchapter, the Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, shall develop and release publicly on the Department of Justice website a risk and needs assessment system (referred to in this subchapter as the "System"), which shall be used to--

(1) determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;

(2) assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner;

(3) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs, and in accordance with subsection (b);

(4) reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison;

(5) reassign the prisoner to appropriate evidence-based recidivism reduction programs or productive activities based on the revised determination to ensure that--

    (A) all prisoners at each risk level have a meaningful opportunity to reduce their classification during the period of incarceration;

    (B) to address the specific criminogenic needs of the prisoner; and

    (C) all prisoners are able to successfully participate in such programs;

(6) determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities in accordance with subsection (e);

(7) determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624; and

3

(8) determine the appropriate use of audio technology for program course materials with an understanding of dyslexia.

In carrying out this subsection, the Attorney General may use existing risk and needs assessment tools, as appropriate.

See 18 U.S.C. 3632(a)(1)-(8).

15. Upon entry, Federal Bureau of Prisons ("BOP") conducted the initial Risk and Needs Assessment via the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN") tool.

16. Petitioner was determined to have a minimum risk of recidivism.

17. Petitioner has been successfully participating in the Act's authorized Evidence-Based Recidivism Reduction Programming and Productive Activities since his entrance into FCI Otisville Satellite Camp.

18. Petitioner, on November 27, 2019, had his second consecutive assessment classifying him, again, as minimum risk recidivism level.

19. The Act states:

**(A) In general.**--A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
**(i)** A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
**(ii)** A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

18 U.S.C.A. § 3632(d)(4)(A).

20. As a result of Petitioner's risk assessment, he should receive 15 days of time credit for each 30 days in the activities.

4

21. The Act states further that "[t]ime credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities *shall be applied toward time in prerelease custody or supervised release*. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release." Id. (Emphasis added).

22. Furthermore, under the federal sentencing statutes: "[i]f the Sentencing Court included as part of the prisoner's sentence a requirement that the prisoner be placed on a term of Supervised Release after imprisonment ... the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of Supervised Release at an earlier date ... based on the application of time credits under Section 3632." 18 U.S.C. § 3521(g)(3).

23. Petitioner's sentence included three (3) years of Supervised Release and under application of the Act, makes transfer to Supervised Release the highest application of earned time credits.

24. Additionally, § 3632(d)(6) of the FSA provides: "In addition, the incentives described in this Subsection shall be in addition to any other rewards or incentives for which a prisoner may be eligible."

25. Petitioner, as stated, received a three (3) year sentence of incarceration, in total, on all counts.

26. Pursuant to The Act, Petitioner is entitled to fifty-four (54) days per sentenced year as good time credit; this means that Petitioner is entitled to one hundred and sixty-two (162) days credit for good time.

27. Petitioner spent the following days incarcerated, all of which he would be entitled to credit for under the act, May 6, 2019 until May 21, 2020, then again from July 9, 2020 until July 24, 2020, for a total of three hundred and ninety-five (395) days.

28. Petitioner is entitled to the full fifteen (15) day credit under the act, for a total of one hundred and ninety-seven (197) days.

29. The total credit Petitioner is entitled to, when factoring in both his good time and his First Step credits, is three hundred and fifty-nine (359) days.

30. Petitioner's release date, pursuant to these credits, is May 29, 2021.

31. Petitioner has also accumulated more than seven hundred (700) hours of "time credits" as outlined and defined in § 3632 (d)(4)(C) of the FSA.

32. Petitioner has completed the following classes while incarcerated, with the hours completed noted in parentheses behind each stated class: DTRM (24), Drug Education: Freedom from Drugs (15), Interventions 2 (60), Health/Fitness (3), Victim Impact (26), Threshold Program (72), P.M.A. (24) and Business Start-Up (16).

33. Furthermore, Petitioner worked at Water Treatment and the Pipe Shop H.V.A.C. for a total of five hundred (500) hours.

34. The applicable statutes provide no guidance as to how these hours are to be calculated towards credit towards Petitioner's sentence.

35. At the present time, despite Petitioner performing the above actions and taking advantage of the time credits available under the Act, the Bureau of Prisons is not calculating the time credits owed to Petitioner or informing Petitioner of where he stands.

36. The Bureau of Prisons has failed, despite repeated and numerous requests by Petitioner, through the appropriate and proper channels, to provide Petitioner with any calculation of time credits.

37. As a result, Petitioner is unable to appropriately challenge the determination of the Bureau of Prisons, as they refuse to make any determination.

38. This matter must be resolved in the near future because if the Bureau continues to fail in its duties, the Petitioner is likely to be incarcerated for longer than is proper under the statutes.

## EARLIER CHALLENGES OF THE DECISION OR ACTION

39. Petitioner has filed an administrative grievance about this matter and the Respondents have continued to fail to make the required calculations.

40. The issue is not that Petitioner disputes the Bureau of Prison's calculations of his First Step time credits, the issue is *that no agency or representative will provide him with any calculation whatsoever regarding his time credits.*

41. Petitioner has submitted numerous requests to every arm of the Government he can, including the Department of Justice and Bureau of Prisons, in an effort to have them simply make some – or any – calculation of his credits.

42. The Government, initially, steadfastly refused to even reply to Petitioner.

43. Petitioner has submitted a BP-9 and other administrative forms, as well as emailed officials and representatives of the Government, in an effort to have the Government provide him with the official calculation of his time credits.

44. Petitioner was either ignored, told that "someone" (with no identity of who "someone" is) will look at it or that the calculations should have been done already and the Government is not sure why it has yet to be completed.

45. The failure to make the needed calculations was made worse by the fact that Petitioner provided the Bureau of Prisons the calculations and time credits as laid out above, thus, performing nearly all of the work for the Bureau of Prisons.

46. After all of the above, a representative from the Bureau of Prisons told Petitioner that he would receive his calculation by December 14, 2020.

47. December 14th came and went, and no calculation was provided.

48. On December 15, 2020 Petitioner received a letter from the Bureau of Prisons with their "calculations".

49. The decision of the Bureau of Prisons on Petitioner's calculation was that there is no calculation – it stated that Petitioner was not entitled to any credits for his work performed at FCI Otisville – addressing the issue of his five hundred (500) credit hours - but did not provide any calculation for his FSA time, pursuant to the act.

50. This "calculation" is nothing more than another delay tactic, as it goes against the plain language of the statute, as Petitioner is absolutely entitled to credit under the act, at the very least, fifteen (15) days a month.

51. Petitioner is at a loss as to why the Bureau of Prisons would provide him a calculation, late, that would purposefully focus on a narrow issue raised in Petitioners letter, rather than the most pressing issue – Petitioner's fifteen (15) day a month credit calculation.

52. This stonewall tactic by the Government has functionally deprived Petitioner of any meaningful administrative process in this matter.

53. The administrative process is to be used to challenge the decision of the Government, i.e. once the Government asserts Petitioner's time credits and ultimate adjusted release date, the administrative process would be used to challenge those determined time credits or release date.

54. Petitioner is unable to make any meaningful use of the administrative process as the Government refuses to make any initial determination.

55. Depending on the Bureau of Prisons' calculations, Petitioner could be eligible for release in a matter of weeks or months, making the harm suffered by Petitioner – incarceration past his release date – near immeasurable and potentially immediate.

56. Furthermore, the Government has offered no guidance whatsoever regarding the calculation of Petitioner's time credits, as detailed above, making it possible that he has already served well past his release date, causing Petitioner further – and immediate – harm.

57. The Government's above stated failure has effectively and completely locked Petitioner out of the administrative process, as Petitioner has no decision to appeal.

58. Any attempt by Petitioner to engage the Government in an effort to have them calculate his First Step credits will be useless, as it will yield the same result as described above.

59. Respondents have denied Petitioner's appeals and have taken no meaningful action.

60. Petitioner cannot receive meaningful relief at the moment as the Respondents have failed to calculate his credits at all.

## MOTION UNDER 28 U.S.C. §2255

61. Petitioner has challenged the validity of his sentence as imposed by previously filing a Motion under 28 U.S.C. §2255.

62. The Court denied the Petitioner's motion, but he did not raise the issues herein because they were not relevant to a motion under section 2255.

63. This case does not concern immigration proceedings.

64. As such, Petitioner is not seeking relief by filing appeals with the Board of Immigration Appeals.

## GROUNDS FOR RELIEF

65. As shown above, the Petitioner has a right to time credits due to him under the First Step Program.

66. If relief is not granted, Petitioner will likely spend more time in confinement than he is required to under the law.

67. Such a result would be a fundamental denial of due process and a violation of Petitioner's rights

68. Due process requires application of afforded statutory rights granted by Congress and stands for the principle that "[m]inimum due process rights attach to statutory rights." Dia v. Ashcroft, 353 F.3d 228, 239 (3rd Cir. 2003) (alteration in original) (quoting Marincas v. Lewis, 92 F.3d 195, 203 (3rd Cir. 1996)).

69. A plaintiff must prove that he possessed a protected liberty (or property) interest and he was deprived of that interest without process to which he was constitutionally entitled. See Bd. Of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972).

70. Here, Petitioner can show that he will potentially be wrongfully deprived of his liberty without relief.

## REQUEST FOR RELIEF

**WHEREFORE,** Petitioner prays that this Court grant the following relief:

(1) Issue an Order requiring the Bureau of Prisons to calculate and apply the proper credits owed to Petitioner under the statutes listed above;

(2) Award Petitioner reasonable costs and attorneys' fees; and

(3) Grant any other and further relief that this Court may deem fit and proper.

DATED: December 21, 2020

Respectfully submitted,

MICHAEL D. COHEN, *Pro Se*
1399 Franklin Avenue Ste 200
Garden City, NY 11530

1