**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
MICHAEL D. COHEN,

                    Petitioner,                    NO. 20 Civ. 10833 (JGK)

       v.

UNITED STATES OF AMERICA, and
MICHAEL CARVAJAL, DIRECTOR OF
THE FEDERAL BUREAU OF PRISONS

                    Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**PETITIONER'S REPLY TO RESPONDENT'S**
**ANSWER TO PETITION FOR A WRIT OF HABEAS CORPUS**

 

MICHAEL D. COHEN
Pro Se Petitioner
1399 Franklin Avenue, Suite 200
Garden City, New York 11530
██████████████

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ii-iii

I.      PRELIMINARY STATEMENT.......................................................... 1

II.     ARGUMENT…………………………………………………….......…4

        A.  There is No Exhaustion Requirement in this Case…………………...........5

            1.  Petitioner's BP-9 was Rejected and Appeal Ignored…………............6

            2.  Mr. Cohen Faces Irreparable Harm Due to His Unlawful Imprisonment
                and the Resulting Violation of his Constitutional Rights……………. 6

            3.  Although Respondent Attempts to Futilely Argue That Mr. Cohen is
                Not Entitled to ETC, the Only True Issue Presented is Limited Only to
                the Interpretation of 18 U.S.C. § 3621 ………………………………7

            4.  Additional Administrative Appeals Would be Futile…………………7

        B.  Section 3621 of the Act is Operative and is Not Stayed or Postponed by the
            Two-Year Deadline by Which it is to be Extended to "All Prisoners"….……8

            1.  Statutory Interpretation Standard of Review…………………………9

            2.  The Act's Plain Language Entitles Qualifying Inmates to Receive
                Credit Beginning January 15, 2020, Not January 15, 2022………….. 10

            3.  The Placement of the Provision in the Statutory Scheme is Consistent
                with Petitioner's Interpretation …………………………………….. 11

            4.  The Interpretation of the Statute by the Attorney General and the BOP
                is Consistent with Petitioner's Interpretation and Contrary to
                Respondents' ………………………………………………………….12

        C.  Respondents' Contention that Mr. Cohen is not Entitled to Obtain Earned
            Time Credits Is Contrary to the Plain Interpretation of the Statute, and has no
            Basis in Law or Fact …………………………………………………….....13

    II.     CONCLUSION……………………………………………………….........16

i

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*Beattie v. Line Mt. Sch. Dist.*,
  992 F. Supp. 2d 384 (M.D. Pa. 2014) ........................................................... 7

*Brown v. Rison*,
  895 F.2d 533 (9th Cir. 1990) ...................................................................... 5

*Buck v. Stankovic*,
  485 F. Supp. 2d 576 (M.D. Pa. 2007) ......................................................... 7

*Chevron, U.S.A., Inc. v. NRDC, Inc.*,
  467 U.S. 837 (1984) .................................................................................... 9

*Conn. Nat'l Bank v. Germain*,
  503 U.S. 249 (1992) .................................................................................... 9

*Cohen v. Barr et al.*,
  No. 20-cv-5614, (A.K.H. July 30, 2020)…………………………...………………4

*Goodman v. Ortiz*,
  No. 20-cv-7582, (R.M.B Aug. 25, 2020)…………………………………….....1,6-9

*Hare v. Ortiz*,
  20-cv-14093 (RMB Feb. 4m 2021)…………………………………………………..8

*Holloway v. United States*,
  526 U.S. 1 (1999) ........................................................................................ 9

*Jones v. Ortiz*,
  No. 19-451 (RMB), 2019 WL 2376158 (D.N.J. June 5, 2019) ........................... 6-7, 9

*Kingdomware Techs., Inc. v. United States*,
  136 S. Ct. 1969 (2016) ................................................................................ 9

*Kurti v. White*,
  No. 1:19-cv-2109, 2020 WL 2063871 (M.D. Pa. Apr. 29, 2020) ................................ 5

*Madigan v. McCarthy*,
  503 U.S. 140 (1992) .................................................................................... 5

*United States ex rel. Taylor v. Redman*,
  500 F. Supp. 453 (D. Del. 1980) ................................................................. 6

**Statutes**

18 U.S.C. § 104 ................................................................................................. 12, 13

18 U.S.C. § 3621 .............................................................................................. i, 8

18 U.S.C. § 3621(h) ........................................................................................ 7, 12

18 U.S.C. § 3621(h)(1) .................................................................................... 3, 10, 11

18 U.S.C. § 3621(h)(1)(A) ........................................................................... 10

18 U.S.C. § 3621(h)(1)(B) ........................................................................... 10

18 U.S.C. § 3621(h)(1)(C) ........................................................................... 10

18 U.S.C. § 3621(h)(2) ........................................................................ 3, 8, 9, 10

18 U.S.C. § 3621(h)(2)(A) ........................................................................... 11

18 U.S.C. § 3621(h)(2)(B) ........................................................................... 11

18 U.S.C. § 3621(h)(3) ................................................................................ 11

**Other**

*Einstein's Parable of Quantum Insanity* (September 23, 2015),

https://www.scientificamerican.com/article/einstein-s-parable-of-quantum-insanity/#:~:text="Insanity%20is%20doing%20the%20same,usually%20attributed%20to%20Albert%20Einstein.&text=In%20quantum%20mechanics%20you%20can,times%20and%20get%20different%20results ................................................................................. 8

*Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation* (Jan 15, 2020),

https://www.justice.gov/opa/pr/department-justice- announces-enhancements-risk-assessment-system-and-updates-first-step-act ............................................................12

*First Step Act – Frequently Asked Questions: When can inmates begin earning time credits?* (last checked Aug. 17, 2020),

https://www.bop.gov/inmates/fsa/faq.jsp#fsa_time_credits ............................................13

Petitioner Michael Cohen respectfully submits this memorandum of law in reply to the Answer to Petition for a Writ of Habeas Corpus (the "Answer") submitted by Respondents, United States of America, and Michael Carvajal, Director of the Federal Bureau of Prisons.

## PRELIMINARY STATEMENT

On August 25, 2020, New Jersey District Court Judge, the Honorable Renee Marie Bumb, stated in her decision in *Goodman v. Ortiz*[1] "The BOP's position that a prisoner can complete the PATTERN program before January 15, 2022 with no benefit to the prisoner is contrary to the statutory language, not to mention the unfairness of such a result. Therefore, the Court concludes that Petitioner is entitled to habeas relief." Unsurprisingly, upon information and belief, the BOP has not given a single inmate the *credit* they deserve, without having a court direct them to do so.

This lack of interest in returning individuals to their family and society highlights that they do not want to do what is right and, most importantly, required under the law. The Federal Bureau of Prisons ("BOP") has been given since December 2018 to create and implement a uniform program with guidelines for which inmates could easily follow. The notion that Mr. Cohen has sued the wrong individual shows how little Respondents speak to one another. If they had merely inquired with FCI Otisville Camp Prison Administrator – Robert Schreffler, the government would have immediately learned that Mr. Cohen is no longer in the custody and control of FCI Otisville or its warden, and was actually turned over to the BOP under home confinement.

---

[1] No. 20-cv-7582, at * 15 (R.M.B Aug 25, 2020).

The government has both the facts of this case, as well as the relevant law entirely wrong. Once again, The Assistant United States Attorney's Office, the BOP and others, are attempting to peddle their false defense of the administrative remedy requirement as yet another means to deny Mr. Cohen the benefit under the statute. The administration at FCI Otisville had already begun informing inmates of the opportunities provided by the statute and also began implementing programs for them to participate in. Specifically, Nicole Gulliver – Case Manager at FCI Otisville, who along with other BOP staff members, held several mandatory town hall meetings whereby they stated that all courses and work assignments would provide good time credit / earned time credit under the First Step Act and, as more information about the act was revealed to her, she would hold additional town halls to keep everyone updated. Gulliver's affidavit is reprehensible in that it too seeks to diminish the programs she and FCI Otisville staff directly told Mr. Cohen to take, as well as the 380 days that he worked divided amongst the HVAC pipe shop and the water treatment facility.

The sheer fact that the government took 60 days, the full term provided by this Court, to recycle and copy and paste the same losing arguments that they have previously presented to other courts is a slap in the face to this Court and to Your Honor. The government is merely running out the clock on Mr. Cohen, and using the justice system and this Court to do so.

Notwithstanding the aforementioned, having fully complied with the plain terms of the First Step Act,[2] Mr. Cohen could have been released from home confinement more

---

[2] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194 (codified as amended in

than 60 days ago. The straightforward, mechanical application of the Act provides earned sentencing credit for inmates who complete certain qualifying "evidence-based recidivism reduction ("EBRR") programs ("Programs" or "Programming"). Mr. Cohen is just such an inmate. He began to participate in Programming immediately upon his arrival at FCI Otisville and diligently completed this Programming such that his release date should have been advanced to on or about November 2020. (Annexed hereto as **Exhibit A** is the BOP's EBRR Guide).

Respondent first attempts to circumvent the plain language of the Act by suggesting that the statute permits the Bureau of Prisons ("BOP") to disregard the eligibility of prisoners like Mr. Cohen for immediate release because, it argues, the BOP's obligations to implement Programming to all prisoners does not take effect until January 15, 2022. While it is clear that the Act requires that *all* Programming for *all* prisoners must be fully implemented by 2022[3], it is equally clear from its express statutory language that certain programming for qualified inmates, and the application of credit earned as a result, was to commence on January 15, 2020.[4] Both the Attorney General and the BOP itself have made statements supporting this interpretation. However, Respondents bizarrely mistake the Act's deadline for the government to

_____

scattered sections of 18 U.S.C. and 34 U.S.C.) (the "Act").

[3] *See* 18 U.S.C. § 3621(h)(2) ("so that *every* prisoner has the opportunity to participate in and complete the type and amount of [Programs] . . . they need, . . . the [BOP] shall-- (A) provide such [Programs] . . . for *all* prisoners before [January 15, 2022]; and (B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, *while prisoners are participating in and completing [Programs] and productive activities*.") (emphasis added).

[4] *See* 18 U.S.C. § 3621(h)(1) (requiring Programs to "begin" on January 15, 2020).

3

complete the process of providing every last inmate with the opportunity to qualify for a reduction of sentence, as an opportunity to over-incarcerate certain inmates like Mr. Cohen who already have qualified for reductions under the Act. Respondents have it exactly backwards, because such an interpretation is entirely at odds with the congressional intent and the Act's very purpose.

Moreover, Respondents err in suggesting that Mr. Cohen must first exhaust administrative remedies. Mr. Cohen is excused from exhausting his administrative remedies because (1) he faces irreparable harm (*again*)[5] from this violation of his constitutional rights, (2) the issue here is solely one of statutory interpretation, and (3) exhaustion is futile because Mr. Cohen is past his release date and the BOP appears to have ignored his requests.

The dispute as joined by Respondents is a narrow one of statutory construction. Respondent asks the Court to interpret the Act in a manner that effectively negates the earned sentence credits authorized by the Act and the BOP's own implementing regulations and decisions. There is genuine urgency to this issue. Each day that this matter is pending is a day that Mr. Cohen is incarcerated unlawfully. Petitioner therefore asks (i) that the Court order his release pending adjudication of this statutory question to immediately abate the ongoing and irreparable harm of his excessive confinement, and (ii) that the writ be granted for the reasons stated both in Mr. Cohen's Petition and the arguments described below.

[5] *Cohen v. Barr et al.* No. 20-cv-5614 (A.K.H July 30, 2020).

**ARGUMENT**

**A.**          **There is No Exhaustion Requirement in this Case**

Respondents argue that the Petition should be dismissed because Mr. Cohen allegedly failed to exhaust his administrative remedies. Answer 9. Because exhaustion in the context of a habeas petition is a prudential consideration and not a jurisdictional one, the Court may consider the Petition regardless of exhaustion. *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990). Given Petitioner's unlawful imprisonment and the BOP's predicable denial of his BP-9 request for ETC to be calculated and applied, Residential Reentry Manager ("RRM") Patrick McFarland[6], responded similarly; that none of the completed classes or work assignments were specific classes listed in the EBRR program book. Of greater concern is Mr. McFarland's further response, "to the extent that any of them can be construed as meeting the criteria, you have not achieved the requisite number of credit hours to qualify you for ETC." (Annexed hereto as **Exhibit B** is RRM McFarland's Reply). It should be noted, as per the BP-9 request, Mr. Cohen provided a clear and exact mathematical calculation, evidencing more than 700 hours of ETC. As described below, the Court should not dismiss the Petition for failure to exhaust. Exhaustion is excused here for various independent reasons, including because (1) the prisoner faces irreparable harm from the violation of his constitutional rights and the delay incident to pursuing administrative remedies, (2) the issue presented only pertains to statutory construction, and (3) exhaustion would be futile. *See Madigan v. McCarthy*, 503 U.S. 140, 146-49 (1992); *Kurti v. White*, No. 1:19-cv-2109, 2020 WL 2063871, at *3

_____

[6] The same individual who remanded Mr. Cohen back to prison on July 9, 2020, determined by Judge Alvin K. Hellerstein as an act of retaliation by then Attorney General, William Barr and the BOP.

(M.D. Pa. Apr. 29, 2020); *Jones v. Ortiz,* 2019 WL 2376158, at *4 (Bumb, J.); *Goodman*, 20-cv-7582, (R.M.B. Aug. 25, 2020). Mr. Cohen independently satisfies all three grounds.

### 1.      Petitioner's BP-9 was Rejected, and Appeal Ignored

Respondents allege that Mr. Cohen failed to exhaust his administrative remedies. Answer 11. Respondents go on to explain that although Mr. Cohen filed a BP-9 request for an administrative remedy with the BOP on December 1, 2020, he failed to complete the remainder of the administrative process before filing the instant action on December 21, 2020. This is demonstrably false. In fact, Mr. Cohen had attempted to contact the BOP's Central Office, leaving multiple messages to discuss the determination by Metropolitan Detention Center RRM, Patrick McFardland. Unfortunately, Mr. Cohen's pleas, attempts to communicate, and/or requests for similar relief remained ignored and unanswered. Regardless, dealing with the BOP on this matter proved to be an exercise in futility.

### 2.      Mr. Cohen Faces Irreparable Harm Due to His Unlawful Imprisonment and the Resulting Violation of his Constitutional Rights

Mr. Cohen has already accumulated sufficient credits under the Act to earn his release in November 2020. As such, he faces irreparable harm every day that his unlawful imprisonment continues. *See U. S. ex rel. Taylor v. Redman*, 500 F. Supp. 453, 460 (D. Del. 1980) ("continued unlawful incarceration" subjects prisoner to "immediate irreparable injury").

This unlawful imprisonment also violates his constitutional rights, including his right to liberty under the Fifth Amendment. *See* Pet. 10. "Deprivation of a constitutional

right alone constitutes irreparable harm as a matter of law, and no further showing of irreparable harm is necessary." *Beattie v. Line Mountain Sch. Dist.*, 992 F. Supp. 2d 384, 396 (M.D. Pa. 2014); *Buck v. Stankovic*, 485 F. Supp. 2d 576, 586 (M.D. Pa. 2007). For these reasons, the Court should excuse any need to exhaust due to the existence of irreparable harm.

### 3. Although Respondent Attempts to Futilely Argue that Mr. Cohen is Not Entitled to ETC, the Only True Issue Presented is Limited Only to the Interpretation of 18 U.S.C. § 3621(h)

Although Respondents try to allege that Mr. Cohen has not earned any ETC, this is entirely contradicted by both Gulliver's town hall meetings, as well as the plain reading of the BOP's EBRR Programs and Productive Activities (PA) guidelines.

Therefore, Respondent only effectively contests the interpretation of the "phase-in" provision contained in 18 U.S.C. § 3621(h). This is a pure question of statutory interpretation, one that turns solely on when the phase- in provision went into effect. These issues, explained in detail above, relate exclusively to questions of interpretation. As such, there is no requirement to exhaust administrative remedies. *See Jones*, 2019 WL 2376158, at *4 (Bumb, J.); *see also Goodman*, 20-cv-7582, (Aug 25, 2020 R.M.B) (where issues related to specific provisions of the Act and "BOP consistently denied relief based on its interpretation of [the relevant section] of the Act," the "issues presented in the habeas petition fit within the 'statutory construction' exception to exhaustion").

### 4. Additional Administrative Appeals Would be Futile

As with the issue of irreparable harm, futility is established from the fact of Petitioner's continued imprisonment on home confinement past his release date. The

BOP's handling of Petitioner's BP-9 request also proves futility. Given these facts and Petitioner's potential release date of November 2020, pursuing further administrative remedies would be pointless. The BOP has demonstrated a lack of interest in putting forth a quantifiable calculation in which the number of hours and courses an inmate has completed is easily identifiable.

Albert Einstein once stated, "The definition of insanity is doing the same thing over and over again, but expecting different results."[7] That is especially true here, where the government has tried, yet again, to recycle the same defective arguments as they previously presented in both *Hare v. Ortiz* 20-cv-14093 (RMB), and *Goodman v. Ortiz* 20-cv-7582 (RMB). However, not only are they now impeding upon Mr. Cohen's Constitutional rights (*again*), but they are impeding the purpose of the First Step Act signed into law as the only bi-partisan act stemming out of the Trump Administration. The reality is that they are refusing to grant any earned time credit ("ETC) to anyone, your Petitioner herein included.

### B.   Section 3621 of the Act Is Operative and Is Not Stayed or Postponed by the Two- Year Deadline by Which It Is to Be Extended to "All Prisoners"

Respondent argues that Mr. Cohen's Petition is "premature" because, under Respondent's strained interpretation of the Act, the BOP's obligation to implement the EBRR program and award ETC is not ripe. Answer 8. Respondents' argument is based solely on their strained and illogical interpretation of the "phase-in" period set forth in 18

---

[7] *Einstein's Parable of Quantum Insanity* (September 23, 2015). https://www.scientificamerican.com/article/einstein-s-parable-of-quantum-insanity/#:~:text="Insanity%20is%20doing%20the%20same,usually%20attributed%20to%20Albert%20Einstein.&text=In%20quantum%20mechanics%20you%20can,times%20and%20get%20different%20results

U.S.C. § 3621(h)(2). Answer 8. This argument is flatly wrong and is belied by the plain language of the statute and the public statements of the Attorney General and the BOP itself. The black-and-white language of Section 3621(h)(2) limits the purpose of this provision to setting a "no later than" date by which the risk and needs assessment system (the "System"), and related credits, must be made available to "every" and "all" inmates. 18 U.S.C. § 3621(h)(2)[8] This cannot logically be read to counter-productively preclude application to qualifying inmates in the interim, as Respondent suggests. *Goodman*, No. 20-cv-7582, at (R.M.B)

       **1.**       **Statutory Interpretation Standard of Review.**

In cases of statutory interpretation such as this, courts apply the *Chevron* standard, which requires that the courts "give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). "When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992) (quotation omitted). The Court should consider "not only the bare meaning of the critical word or phrase but also its placement and purpose in the statutory scheme." *Holloway v. U.S.*, 526 U.S. 1, 6 (1999) (quotation omitted). "If the statutory language is unambiguous and the statutory scheme is coherent and consistent the inquiry ceases." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969 (2016) (quotation omitted). [9]

---

[8] See note 2, *supra*.

[9] This was the process followed by this Court in reviewing the BOP's interpretation of the Act in *Jones v. Ortiz*, No. 2:19-cv-451, 2019 WL 2376158, at *4 (D.N.J. June 5, 2019).

Here, the words and the intent of the statute are unambiguous and contrary to

Respondent's interpretation

> **2.      The Act's Plain Language Entitles Qualifying Inmates to Receive
> Credit Beginning January 15, 2020, Not January 15, 2022**

Section 3621(h)(1) states that on January 15, 2020, 180 days after the Attorney

General completed and released the System, the BOP was to "implement and complete an

initial risk and needs assessment for each prisoner" and "begin to assign prisoners to

appropriate [Programs]." 18 U.S.C. § 3621(h)(1)(A). The BOP also was required to

"begin to expand the effective [Programs] and productive activities it offers and add any

new [Programs] and productive activities necessary to effectively implement the

[System]." 18 U.S.C. § 3621(h)(1)(B). Finally, the BOP was also to "begin to implement

the other risk and needs assessment tools necessary to effectively implement the System

over time, *while prisoners are participating in and completing the effective [Programs]

and productive activities*." 18 U.S.C. § 3621(h)(1)(C) (emphasis added). These

requirements all align with the plain language of the phase-in provision, which

immediately follows this language and which requires that Programming actively

commence on January 15, 2020 and gradually expand to apply to "all" inmates by the end

of the phase-in period on January 15, 2022. The 2022 date is thus *not* the date on which

the Programming "takes effect," as Respondent claims; rather, it is the end date by which

the BOP must have expanded Programming to cover all inmates.

Section 3621(h)(2) then plainly states that the two year "phase-in" period is the

outer limit on when BOP must make Programming and the resulting credits available to

"all" inmates. 18 U.S.C. § 3621(h)(2).[10] The section is clear that while the phase-in period is to be used to make the program available for "every" and "all" inmates, 18 U.S.C. § 3621(h)(2)(A), certain inmates, such as Mr. Cohen, already have been permitted and indeed are expected to "participat[e] in and complete[ ] [Programs] and productive activities." 18 U.S.C. § 3621(h)(2)(B). This is exactly what Mr. Cohen did, in full compliance with the Act. The plain language of the statute expressly and unambiguously expects inmates to participate in Programs and activities and to accumulate credits as a result. The statute's requirement that the BOP extend the program by January 15, 2022 to cover *all* inmates is to police the BOP's compliance, not to disincentiveize participants. Respondent's claim that the phase-in means that the provision "has not yet taken effect" is contrary to the statute's unambiguous language and should be rejected.

**3.    The Placement of the Provision in the Statutory Scheme is Consistent with Petitioner's Interpretation**

The surrounding sections of the Act work in harmony with Petitioner's interpretation. In addition to Section 3621(h)(1), described above, Section 3621(h)(3) unambiguously describes the "[P]riority during phase-in" and requires that "[d]uring the 2-year period described in paragraph (2)(A), the priority for such programs and activities

---

[10] (2) Phase-in.--In order to carry out paragraph (1), so that *every* prisoner has the opportunity to participate in and complete the type and amount of [Programs] or productive activities they need, and be reassessed for recidivism risk as necessary to effectively implement the System, the [BOP] shall--
(A) provide such [Programs] and productive activities *for all prisoners* before the date that is 2 years after the date on which the [BOP] completes a risk and needs assessment for each prisoner under paragraph (1)(A); and
(B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, *while prisoners are participating in and completing [Programs] and productive activities.* (emphasis added).

shall be accorded based on a prisoner's proximity to release date." 18 U.S.C. § 3621(h)(3). Under Respondent's interpretation, there would be no need for "priority" to be assigned during the phase-in, because no one would have access to Programs and activities.

Likewise, Section 104 of the Act allocated $60,000,000 to the BOP for "each of fiscal years 2019 through 2023" to "implement the system under section 3621(h) of title 18, United States Code." First Step Act § 104. If the phase-in stayed implementation of the Act until January 2022, as Respondent maintains, then there would be no reason to have allocated the full $60,000,000 to "implement" the system in each fiscal year from 2019 through 2021. The appropriations pattern, like the rest of the statutory scheme, supports the plain language of the section.

    **4.**    **The Interpretation of the Statute by the Attorney General and the BOP is Consistent with Petitioner's Interpretation and Contrary to Respondents'**

On January 15, 2020, the Justice Department released a statement regarding its performance under the Act.[11] It quotes the Attorney General: "*[b]eginning today*, inmates will have even greater incentive to participate in evidence-based programs that prepare them for productive lives after incarceration." *Id.* (emphasis added). The release also states that:

> *[a]s of Jan. 15, 2020*, inmates will be assigned to participate in [Programs] and productive activities based on an initial needs assessment

---

[11] *Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation* (Jan 15, 2020) https://www.justice.gov/opa/pr/department-justice- announces-enhancements-risk-assessment-system-and-updates-first-step-act.

> conducted by BOP. ***Participation and completion of those assigned programs and activities can lead to placement in pre-release custody or a 12-month sentence reduction under the First Step Act.***

*Id*. (emphasis added). This statement is unambiguous: it makes no reference whatsoever to any phase-in, eviscerating Respondent's assertion that no inmate could receive Programming or credit until after the phase-in period. Indeed, the Attorney General's statement makes clear that beginning on January 15, 2020 – not on January 15, 2022 – inmates would be incentivized to participate in programming, and that participation in that programming – again, as of January 15, 2020 – would make inmates eligible for early release.

For its part, the BOP's website contains a set of "Frequently Asked Questions" that includes the question: "When can inmates begin earning time credits?" The answer explains that "FSA Time Credits (FTC) may be earned for completion of assigned [Programs] or productive activities authorized by BOP and successfully completed ***on or after January 15, 2020***."[12] This too is unambiguous, and also provides additional support for Petitioner's plain-language interpretation: the Act allowed inmates with access to programming to begin receiving credits for participation in that programming beginning on January 15, 2020.

## C.    Respondents' Contention that Mr. Cohen is not Entitled to Obtain Earned Time Credits Is Contrary to the Plain Interpretation of the Statute, and has no Basis in Law or Fact

Respondents argue that Mr. Cohen is not entitled to ETC for any of the Courses or

---

[12] *First Step Act – Frequently Asked Questions: When can inmates begin earning time credits?* (last checked Aug. 17, 2020) https://www.bop.gov/inmates/fsa/faq.jsp#fsa_time_credits.

productive activity programs he participated in. Answer 12. For the sake of administrative ease, and to refresh the Court's recollection, during his time at FCI Otisville, Mr. Cohen completed the following courses and/or work assignments; Water Treatment and Pipe Shop/H.V.A.C work assignment (500), DTRM (24), Drug Education: Freedom from Drugs (15), Interventions 2 (60), Health/Fitness (3), Victim Impact (26), Threshold Program (72), P.M.A. (24) and Business Start-Up (16) totaling well over 700+ hours. (Annexed hereto as **Exhibit C** are some of Mr. Cohen's certifications of completion that were signed by, *inter alia*, FCI Otisville counselor – Mr. De Leo, FCI Otisville Chaplain – Mr. Davis, and FCI Otisville Drug Treatment Specialist – E.M. Dariotis). To be clear, Respondent does not dispute that Mr. Cohen completed the aforementioned courses. To the contrary, Respondents merely argue that despite Gulliver directing Mr. Cohen to engage in these classes for the purposes of earning ETC, Mr. Cohen is somehow not entitled to *any* ETC. Additionally, Mr. Cohen voluntarily engaged in other activities in and around FCI Otisville to which there was no benefit bestowed upon him. These activities included, *inter alia*, rebuilding two defective showers, rebuilding eight (8) fire hydrants, and painting the entire facility to ensure the prison passed its inspection with the highest-ranking score.

Moreover, it must be noted how absurd the government's position is in regard to Mr. Cohen's accrual of ETC. Specifically, Respondents merely rely on Gulliver, who has made the following statements, in sum and substance; Mr. Cohen should not benefit from programs completed because he did not need exercise, spirituality, or parenting assistance.

Clearly, Gulliver does not even know the content of the courses Mr. Cohen

participated in, because same was not specific to him as an individual, but rather it was specific to the individual's family, friends, and social universe. Moreover, Gulliver's affidavit questions the very issue as to whether or not she is even capable or competent of being a case manager. It is outrageous that Gulliver would assess any inmate as not qualifying for ETC. Additionally, in the present case, Gulliver has somehow come to the conclusory conclusion that Mr. Cohen has no needs at all. Notwithstanding same, the only defendant that would qualify for ETC under Gulliver's criteria, would be someone who is deceased. Gulliver's affidavit further demonstrates how disingenuous the underlying process is. Contrary to Gulliver's *interpretation* of the process, this proceeding should actually just be an exercise in *mathematics*, where government simply adds up all of Mr. Cohen's ETC hours and assigns the number of days. Even assuming, *arguendo*, that this Court would allocate only a small percentage of ETC, Mr. Cohen would be released from home confinement and on supervised release at this point.

So as not to lengthen or give credence to the governments and Gulliver's nonsensical affidavit, it begs the question of what individual separated for the first time in his life from his wife and children, does not need a course in dealing with this overwhelming emotional pain. Additionally, it was not just Mr. Cohen's pain, but understanding and appreciating the pain being felt by Mr. Cohen's wife, daughter and son, of him being; (1) incarcerated and (2) not readily available to handle family matters as he had been the patriarch of his family. Not surprisingly, despite everyone needing additional spirituality in their lives, Gulliver has unilaterally determined that Mr. Cohen is devoid of this need as well.

Gulliver, who wrote her affidavit under penalty of perjury, additionally claims

that Mr. Cohen *also* did not have a *need* in the area of fitness. As such, Gulliver represents to the government, Petitioner herein, and most importantly this Court and Your Honor, that she knows the aforementioned to be true. Uncoincidentally, however, just this past year, Mr. Cohen was released to home confinement based upon the Covid-19 pandemic because of his comorbidities, which included, *inter alia*, high blood pressure, and preexisting pulmonary and cardiac issues. Although Gulliver hangs her affidavit on the interpretation of the statue, the same is silent insofar as her assertion that inmates' course assignments need to be tailored to an individual inmate's specific needs. This novel argument fails miserably in that the statute is void of this language, and there is no basis in which to believe that this interpretation was complicated or intended for the statute.

## CONCLUSION

If your Honor is inclined to hold a hearing in this case, Petitioner reserves the right to call witnesses including, but not limited to, FCI Otisville counselor – Joseph De Leo, FCI Otisville Case Manager – Nicole Gulliver, FCI Otisville Camp Prison Administrator – Robert Schreffler, and Metropolitan Detention Center Residential Reentry Manager [RRM] – Patrick McFarland. For the foregoing reasons, the Petition should be granted and a writ should issue.

Dated:  March 26, 2021
        Garden City, New York

                                        Respectfully submitted,

                                        */s/ Michael Cohen*

                                        MICHAEL D. COHEN
                                        Pro Se Petitioner
                                        1399 Franklin Avenue, Suite 200
                                        Garden City, New York 11530
                                        ████████████████