UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL D. COHEN,

                              Petitioner,

          -against-

UNITED STATES OF AMERICA;
MICHAEL CARVAJAL, Director of
the Federal Bureau of Prisons,

                              Respondents.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/20/21

20-CV-10833 (JGK)

MEMORAUNDUM OPINION
AND ORDER

JOHN G. KOELTL, United States District Judge:

     The petitioner, Michael D. Cohen, brought this petition for
a writ of habeas corpus pursuant to 28 U.S.C. § 2241,
challenging the execution of his sentence, specifically the
calculation of earned time credits ("ETCs") towards his sentence
in accordance with the First Step Act of 2018, P.L. 115-391 (the
"FSA" or the "Act"). For the reasons explained below, the
petition is **dismissed**.

                              I

     Mr. Cohen pleaded guilty to five counts of tax evasion in
violation of 26 U.S.C. § 7201, one count of making a false
statement to a financial institution in violation of 18 U.S.C.
§ 1014, two counts of making unlawful campaign contributions in
violation of 52 U.S.C. § 30109(d)(1)(A), and one count of making
a false statement to the Congress in violation of 18 U.S.C.
§ 1001(a)(2), and was sentenced to 36 months' imprisonment and 3

years of supervised release. Mr. Cohen began serving his sentence on or about May 6, 2019 and after July 24, 2020, he has been serving his sentence in home confinement. Summers Decl. ¶¶ 3-4. His full sentence runs through May 3, 2022, but Mr. Cohen is currently projected to receive 162 days of Good Conduct Credit. Id. ¶ 6. Accordingly, his current projected release date is November 22, 2021. Gulliver Decl. ¶ 17.

Mr. Cohen filed a request for an administrative remedy on December 1, 2020, seeking a determination of his ETCs pursuant to the FSA. Summer Decl. ¶ 5. On December 15, 2020, Mr. Cohen received a letter, informing him that he is not entitled to any ETCs. ECF No. 22, Ex. B. ("AR Response") at 2. Mr. Cohen filed this petition on December 21, 2020, and argues that because of the ETCs he believes he accumulated in accordance with the FSA, his release date should be May 29, 2021. ECF Nos. 1, 20, at 6.[1]

## II

Pursuant to 28 U.S.C. § 2241, an inmate in federal custody may seek a writ of habeas corpus to challenge the execution of his sentence subsequent to conviction, see Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001),[2] such as the

---

[1] In his reply brief, Mr. Cohen asserts that he should have already been released in November 2020. ECF No. 22, at 10.

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, citations, footnotes, and internal quotation marks in quoted

2

computation of the prisoner's sentence, see Levine v. Apker, 455

F.3d 71, 78 (2d Cir. 2006). However, "absent a showing of cause

and prejudice, appeals [are required to] proceed in the first

instance through the federal agency review process." Carmona,

243 F.3d at 634. In the Bureau of Prisons ("BOP") context, there

is a four-step process for inmates to exhaust administrative

remedies: informal resolution, initial filing and two levels of

appeals. See 28 C.F.R. §§ 542.13-15; Gonzales v. Perrill, 919

F.2d 1, 2 (2d Cir. 1990) (per curiam).

### III

The Government argues that the petition should be denied

for three reasons. First, the petition is premature and not ripe

for review because the relevant provisions of the FSA have not

been fully implemented. Second, the petition should be denied

for failure to exhaust administrative remedies. Third, the

petition fails on the merits because Mr. Cohen does not qualify

for any time credits under the FSA.

### A

The Government argues that the petition is premature and

not ripe for review.

---

text.

3

The First Step Act was signed into law on December 21, 2018. Under the Act, an eligible prisoner "who successfully completes evidence-based recidivism reduction programming or productive activities" and who is "determined by the Bureau of Prisons to be at a minimum or low risk for recidivating" shall earn 15 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities. 18 U.S.C. § 3632(d)(4)(A).

The Act provided for a gradual development of the framework of evaluation and programming pursuant to which various incentives, including time credits, could be earned. First, not later than 210 days after enactment, the Attorney General was required to develop and publicly release a risk and needs assessment system (the "System"), which would be used to determine the recidivism risk of each prisoner and determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner based on the prisoner's criminogenic needs. Id. § 3632(a). Then, within 180 days of the release of the System—that is, by January 15, 2020— the BOP was required to implement and complete the initial risk and needs assessment for each prisoner. Id. § 3621(h)(1). Thereafter, the Act provided for what it termed a "[p]hase-in," in which the BOP was directed "provide such evidence-based

4

recidivism reduction programs and productive activities for all
prisoners before the date that is 2 years after the date on
which the Bureau of Prisons completes a risk and needs
assessment for each prisoner." Id. § 3621(h)(2)(A). During the
phase-in, the Act provided that "the priority for such programs
and activities shall be accorded based on a prisoner's proximity
to release date." Id. § 3621(h)(3). The Act also provided for a
"[p]reliminary expansion of evidence-based recidivism reduction
programs and authority to use incentives," pursuant to which,
beginning on the date of enactment, the BOP "may offer to
prisoners who successfully participate in such programs and
activities . . . incentives" such as time credits. Id. §
3621(h)(4).

The Government argues that Mr. Cohen's petition is not ripe
for review because, under the FSA, the BOP is not required to
provide evidence-based recidivism reduction programing and
productive activities for all prisoners, or calculate or apply
time credits earned, until January 15, 2022. The government
relies on the two-year phase-in period set out in the statute
which commenced on January 15, 2020, see id. § 3621(h)(2), and
the language of the statute that indicates that the BOP has
discretion, but is not required to, provide the programs and
incentives during phase-in period, see id. § 3621(h)(4). The

5

petitioner argues that the "phase-in" period does not mean that the FSA provisions regarding time credits do not take effect until January 15, 2022, and therefore must be provided immediately.

The Government's reasoning is more persuasive. The statute clearly envisions that the program will be gradually implemented during the phase-in period. During this period, the Act requires the BOP to provide evidence-based recidivism reduction activities for all prisoners before the two-year anniversary of the date that the BOP completes a risk and needs assessment for each prisoner, namely by January 15, 2022. Id. § 3621 (h)(2)(A). The statute also requires the BOP during the phase-in period to develop and validate the risk and needs assessment to be used in the reassessments of risk of recidivism, while prisoners are participating in and completing evidence-based recidivism programs. Id. § 3621(h)(2)(B). But the statute does not require the BOP to begin awarding ETCs during the phase-in period. Indeed, the statute specifically leaves to the discretion of the BOP whether to expand existing programs and whether to offer to prisoners who successfully participate in such programs incentives and rewards. Id. § 3621(h)(4).

Mr. Cohen mischaracterizes the Government's position as stating that the provisions are "stayed" or "postponed" until

6

the end of the phase-in period and argues that this is contrary to the language of the statute. But this is not the Government's contention. The BOP has statutory requirements during the phase-in period while programs are being developed and implemented, but the BOP is not required to being providing credits and, until the phase-in period is completed, the Court would lack any basis to determine if the BOP was complying with the statutory requirements. Accordingly, there is no basis for the Court to conclude that the failure of the BOP to provide ETCs during the phase-in period is a violation of the First Step Act.

The overwhelming majority of courts to have considered this issue have agreed with the Government's view. See, e.g., Kennedy-Robey v. FCI Pekin, No. 20-CV-1371, 2021 WL 797516, at *4 (C.D. Ill. Mar. 2, 2021); Hand v. Barr, No. 1:20-CV-00348, 2021 WL 392445, at *5 (E.D. Cal. Feb. 4, 2021) (report and recommendation); Llewlyn v. Johns, No. 5:20-CV-77, 2021 WL 535863, at *2 (S.D. Ga. Jan. 5, 2021), report and recommendation adopted, No. 5:20-CV-77, 2021 WL 307289 (S.D. Ga. Jan. 29, 2021); Herring v. Joseph, No. 4:20-CV-249, 2020 WL 3642706, at *1 (N.D. Fla. July 6, 2020). Mr. Cohen insists that the Court instead follow the opinion in Goodman v. Ortiz, No. 20-CV-7582, 2020 WL 5015613, at *6 (D.N.J. Aug. 25, 2020). In Goodman, the court acknowledged that the statute "does not explicitly provide

7

a date when the BOP must apply a prisoner's earned credits from
participation in recidivism reduction programs," id., but still
concluded that the petitioner is entitled to an immediate
application of time credit under the Act because the statute
"does require a 2-year phase-in, not only of participation in
the programs, but of incentives for participation in the
programs." id. While it is true that the statute requires a
phase-in, this misses the point that the statute requires
various activities during the phase-in period, but pointedly
does not require the BOP to being to assign ETCs during the
phase-in period. The statute contemplates a two-year period for
the development of programs and the validation of risk
assessment tools but does not require the BOP to truncate that
process and begin to award ETCs during that period.

Accordingly, the petition is premature and the claim is not
ripe.

**B**

The Government next argues that Mr. Cohen failed to exhaust
the administrative remedies available in the BOP system. It is
plain that Mr. Cohen failed to exhaust his administrative
remedies. There were two levels of appeal that Mr. Cohen chose

8

to ignore.[3] Mr. Cohen argues that his failure to exhaust should

be excused because he suffers from irreparable harm from the

violation of his constitutional rights, the issue presented only

pertains to statutory construction, and exhaustion would be

futile.

Mr. Cohen's arguments do not provide a valid cause for

failure to exhaust. As to his claim of irreparable harm, there

is no basis to conclude that Mr. Cohen's service of his sentence

violates his constitutional rights. There is nothing in the

current petition, or his challenge to the application of the

First Step Act, that raises a colorable constitutional claim. In

contrast, in the case cited by Mr. Cohen, U.S. ex rel. Taylor v.

Redman, the district court first held that the habeas

petitioner's conviction was barred by the double jeopardy clause

of the Fifth Amendment, and in that context determined that a

stay of the court's decision pending appeal was not warranted

due to an "immediate irreparable injury in the form of continued

unlawful incarceration if he is not immediately released." 500

F. Supp. 453, 459 (D. Del. 1980). Mr. Cohen has failed to show

---

[3] Mr. Cohen disputes that he failed to exhaust the administrative process,
because he tried to "contact the BOP's Central Office, leaving multiple
messages to discuss the determination" regarding his ETC. ECF No. 22 at 6.
This does not satisfy the detailed administrative process set out in BOP's
regulations. See 28 C.F.R. §§ 542.13-15. Indeed, the letter from the facility
provided Mr. Cohen with instructions for filing an appeal if he was
dissatisfied with the response contained in the letter. AR Response at 2.

that his current term of home confinement is unlawful. Moreover, Mr. Cohen cannot say he has been deprived of due process when he has refused to take advantage of the administrative remedies available to him.

Mr. Cohen's argument that the issue presented only pertains to statutory interpretation is belied by the parties' papers. In addition to the gateway issue of ripeness, Mr. Cohen and the Government disagree about his eligibility for, participation in, and applicability of the various programs he claims to have completed to any potential time credits under the FSA. These are issues unrelated to statutory interpretation and would benefit from further development of the record in the administrative process. See Carmona, 243 F.3d at 634 (2d Cir. 2001) ("Following the administrative procedures could . . . develop the factual record at the agency level.").

For the same reason, Mr. Cohen's argument that further administrative process would be futile fails. Given the numerous disputed, undeveloped factual issues critical to Mr. Cohen's claim, further administrative proceedings would be useful rather than futile. Moreover, to the extent that Mr. Cohen argues that potential ETCs will be useless to him after he has completed his term of home confinement, he ignores the fact that ETCs can be applied toward time on supervised release and he faces a term of

10

three years of supervised release. See 18 U.S.C.

§ 3632(d)(4)(C).

Accordingly, Mr. Cohen's failure to exhaust administrative remedies is not excused and bars his habeas claim.

C

Because the petition should be dismissed for the reasons stated above, it is unnecessary to reach the Government's argument that Mr. Cohen has not qualified for any ETCs under the FSA.

<strong>CONCLUSION</strong>

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, they are either moot or without merit. For the reasons explained above, the petition for the writ of habeas corpus is **dismissed**.

**SO ORDERED.**

**April 20, 2021**
**New York, New York**

**JOHN G. KOELTL**
**United States District Judge**